IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ADAM C. BROWN-WINDLE, #R71785** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 25-cv-00427-SPM |
| | ) |
| **OFC. WILSON,** | ) |
| **LT. JOHNSON,** | ) |
| **SGT. BIRD, and** | ) |
| **BARWICK (Warden),** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER TO SHOW CAUSE

**McGLYNN, District Judge:**

Plaintiff Adam C. Brown-Windle, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pinckneyville Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He claims defendants failed to protect him from attacks and threats by other inmates. (Doc. 1). He seeks monetary damages and injunctive relief; he also filed a Motion for Emergency Temporary Restraining Order. (Docs. 1, 2).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): On March 18, 2025,

1

other inmates housed on Plaintiff's wing learned about his cellmate's criminal conviction and threatened Plaintiff and the cellmate[1] with physical harm (Doc. 1, p. 3). Plaintiff and his cellmate barricaded the cell with blankets. Plaintiff told an unnamed officer about the threats and was told to wait until the day shift. Plaintiff's cellmate contacted his father by text, asking him to contact the Intelligence Unit. The cellmate's father called the next morning and spoke to Defendant Wilson, who said he would speak to the cellmate.

Later that day, other inmates threw a "feces bomb" into Plaintiff's cell. Plaintiff and his cellmate reported the incident to Defendant Sgt. Bird. However, she merely walked away, saying "that's what you get for writing grievances." (Doc. 1, p. 4). Plaintiff and his cellmate had to clean up the feces without gloves or proper cleaning materials. Throughout the day, other inmates issued threats to stab Plaintiff and his cellmate (Doc. 1, p. 4).

The following day, another feces bomb was thrown into the cell. Plaintiff and his cellmate requested Defendant Lt. Johnson to move them to protective custody ("PC"). Johnson replied that he was not doing PC paperwork and suggested Plaintiff could refuse housing, take the ticket, and go to segregation. Plaintiff declined this option. He believed he would be safer staying in his cell because the gang members who threatened him had warned him that he wouldn't be safe in segregation either.

As of March 25, 2025 (the date Plaintiff submitted his Complaint), Plaintiff had not left his cell for a week, skipping recreation, chow, and showers for fear of attack (Doc. 1, p. 4). Plaintiff's cellmate's father contacted the warden and other officials, but nothing has been done to move him to safety (Doc. 1, pp. 4-5).

---

[1] Plaintiff's cellmate, Thomas M. Smith, filed a nearly identical Complaint in *Smith v. Wilson*, Case No. 25-cv-428-SMY (S.D. Ill. filed March 28, 2025).

**Discussion**

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *see also Booth v. Churner*, 531 U.S. 956 (2001). The purpose behind the exhaustion requirement is to give corrections officials the opportunity to address complaints internally before a federal suit is initiated. *See Maddox v. Love*, 655 F.3d 709, 721-722 (7th Cir. 2011). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under Section 1983." *Massey v. Helman,* 196 F.3d 727, 733 (7th Cir. 1999). Exhaustion must be fully completed before the prisoner files suit; a case filed while a grievance appeal is still ongoing is premature and must be dismissed without prejudice. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

The IDOC grievance procedure provides that an inmate initiates a grievance with his counselor and may then submit his grievance to a prison grievance officer within 60 days after the incident. 20 Ill. Admin. Code § 504.810(a). If the matter is not resolved, the prisoner must seek review by the Chief Administrative Officer ("CAO") at his facility and must appeal an adverse outcome to the Administrative Review Board ("ARB") within 30 days.

While exhaustion of prison administrative remedies "is an affirmative defense with the burden of proof on the defendants," *Maddox*, 655 F.3d at 720, a district court may dismiss a prisoner complaint *sua sponte* for failure to exhaust if the failure is obvious from the complaint. *See Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002).

In Plaintiff's case, he asserts that he was first threatened by other inmates on March 18, 2025. When the defendants took no protective action, Plaintiff filed this suit on March 25, 2025,

3

exactly one week later (Doc. 1, p. 5). This timeline indicates that Plaintiff could not have exhausted the prison grievance procedure before filing this action. Notably, the Complaint does not assert that Plaintiff even initiated the grievance process before he sued.

Accordingly, Plaintiff is **ORDERED** to **SHOW CAUSE** why this case should not be dismissed for failure to exhaust administrative remedies. Plaintiff **SHALL FILE** his written response within 30 days of the date of this Order (**on or before May 19, 2025**). Plaintiff's failure to respond to this Order will result in dismissal of this case without prejudice.

## The Motion for Emergency Temporary Restraining Order (Doc. 2)

Plaintiff asserts that he is "under threat of fatal violence" and his requests for help have been ignored by Pinckneyville staff (Doc. 2, p. 1). He states he has "exhausted all other remedies" including using his cellmate's father to contact outside agencies. *Id.* Plaintiff had allegedly been approved at the facility level to transfer to Big Muddy River Correctional Center ("BMRCC") until officials realized he was not eligible to request transfer until May 20, 2025 (Doc. 2, p. 2). Plaintiff asserts he is depending on his current cellmate, who has been approved for transfer to BMRCC, to help him with this lawsuit. As relief, Plaintiff requests an order for defendants to immediately transfer him and his cellmate Thomas M. Smith to BMRCC and to house them as cellmates there.[2]

A TRO is an order issued without notice to the party to be enjoined that may last no more than 14 days. FED. R. CIV. P. 65(b)(2). A TRO may issue without notice *only* if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should

---

[2] The Court notes that Plaintiff, as a nonlawyer proceeding *pro se*, cannot represent another individual or seek relief for that person. *See Howard v. Pollard*, 814 F.3d 476, 478 (7th Cir. 2015) (*pro se* prisoner cannot represent a class of inmates).

not be required.  FED. R. CIV. P. 65(b)(1).

Without expressing any opinion on the ultimate merits of Plaintiff's claims for relief, the Court concludes that a TRO should not issue in this matter at this time.  Not only does it appear that Plaintiff filed this action prematurely, his allegations also do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard*. The Motion for Emergency Temporary Restraining Order (Doc. 2) is therefore **DENIED**.

**IT IS SO ORDERED.**

DATED:  April 18, 2025

*s/Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**United States District Judge**