IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ADAM C. BROWN-WINDLE,<br><br>    Plaintiff,<br><br>v.<br><br>Ofc. WILSON, *et al.,*<br><br>    Defendants. | Case No. 25-cv-00427-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

  Plaintiff Adam Brown-Windle, an inmate of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Pinckneyville Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Along with the Complaint, Plaintiff filed a motion for a temporary restraining order. (Doc. 2). On April 18, 2025, the Court denied the motion for a temporary restraining order. (Doc. 10). The Court also directed Plaintiff to show cause why this case should not be dismissed for failure to exhaust administrative remedies, as is required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. §1997e(a). (*Id.*). Plaintiff has responded and put forth arguments suggesting that the grievance process was unavailable to him prior to and at the time of filing this lawsuit. (Doc. 11). Thus, the Court finds Plaintiff's assertions sufficient for this case to at least proceed to initial review. The Show Cause Order is **DEEEMED** satisfied.

  Plaintiff has also filed a motion for leave to file an amended complaint. (Doc. 13). The motion is **GRANTED**. *See* FED. R. CIV. P. 15(a)(1)(A). The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. §1915A.

### THE FIRST AMENDED COMPLAINT

Plaintiff alleges that March 18, 2025, other inmates housed on Plaintiff's wing learned about his cellmate's criminal conviction and threatened Plaintiff and the cellmate with physical harm, including stabbing and throwing feces and boiling grease on Plaintiff and his cellmate. (Doc. 13-1, p. 3). Plaintiff and his cellmate barricaded the cell with blankets to prevent forcible entry. Plaintiff told an unnamed officer about the threats and was told to wait until the day shift. Plaintiff's cellmate contacted his father by text, asking him to contact the Intelligence Unit. The cellmate's father was unable to reach anyone. (*Id.*). The cellmate's father called again the next morning and spoke to Defendant Wilson, who said he would speak to the cellmate. (*Id.* at p. 4).

Later that day, other inmates threw a "feces bomb" into Plaintiff's cell. (Doc. 13-1, p. 4). Plaintiff and his cellmate reported the incident to Defendant Sergeant Bird. However, she merely walked away, saying "that's what you get for writing grievances." Plaintiff explains that his cellmate is notorious for writing grievances. Plaintiff and his cellmate had to clean up the feces without gloves or proper cleaning materials. Throughout the day, other inmates issued threats to stab Plaintiff and his cellmate (*Id.*).

The following day, March 20, 2025, another feces bomb was thrown into the cell. (Doc. 13-1, p. 4). Plaintiff and his cellmate requested Defendant Lieutenant Johnson to move them to protective custody ("PC"). Johnson replied that he was not doing PC paperwork and suggested Plaintiff could refuse housing, take the ticket, and go to segregation. Plaintiff declined this option. He believed he would be safer staying in his cell because the gang members who threatened him had warned him that he would not be safe in segregation either. (*Id.*).

From March 18, 2025, through March 25, 2025 (the date Plaintiff submitted his original Complaint), Plaintiff did not leave his cell, skipping recreation, chow, and showers for fear of attack (Doc. 13-1, p. 4). Plaintiff's cellmate's father contacted Warden Barwick and other officials,

but nothing has been done to move him and his cellmate to safety (*Id.* at p. 2, 4-5).

On April 1, 2025, Plaintiff's cellmate was taken to speak to "IA." (Doc. 13-1, p. 5). When the cellmate returned, the cellmate told Plaintiff that he had been forced to sign a document stating that he, the cellmate, did not fear for his safety. The cellmate also told Plaintiff that IA threatened to place him in a segregation cell with a rival gang member if his father did not stop calling the Illinois State Police. (*Id.*).

On April 2, 2025, other inmates began to use extortion to obtain Plaintiff and his cellmate's property. (Doc. 13-1, p. 5). In exchange for his safety, Plaintiff has given other inmates his commissary items and his television. (*Id.*).

On April 3, 2025, Plaintiff spoke to Counselor Haggert about his situation. (Doc. 13-1, p. 5). Haggert told Plaintiff to write a grievance. Plaintiff informed her that there were not any grievance forms available in the housing unit. Haggert did not assist Plaintiff in obtaining grievance forms. She laughed and said, "Well I guess you're fucked, and I have…work to do." (*Id*).

On April 25, 2025, Correctional Officer Haney and another officer issued Plaintiff's neighbor a bogus shakedown slip. (Doc. 13-1, p. 6). Haney told Plaintiff that if Plaintiff attempted to help his neighbor write a grievance about the incident, "we will fuck your shit up next." (*Id.*).

Plaintiff asserts that he is still being extorted by other inmates in exchange for his safety. (Doc. 13-1, p. 5). He states that he must let "someone" read all mail before sending it, and he has no way to get help because staff are doing nothing. (*Id.*).

## PRELIMINARY DISMISSALS

To the extent Plaintiff is attempting to state a constitutional claim because the grievance process has been rendered unavailable to him due to staff conduct and a lack of access to grievance forms, such claims are dismissed. Inmates do not have a constitutional right to an effective

grievance procedure. *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Additionally, the failure of prison officials to follow their own procedures also does not, standing alone, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992). Accordingly, Plaintiff cannot bring a constitutional claim against any of the Defendants solely because he is unable to access and utilize the grievance process.

## DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

> **Count 1:** Eighth Amendment failure to protect claim against Wilson, Johnson, Bird, Barwick, and Haggert.
>
> **Count 2:** First Amendment retaliation claim against Bird and Haney.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

## Count 1

Plaintiff claims that Defendants Wilson, Johnson, Bird, Barwick, and Haggert were all informed that other inmates are threatening violence against him, but they have failed to take any action to ensure his safety. Count 1 will proceed. *See Santiago v. Wells,* 599 F.3d 749, 756 (7th Cir. 2010) (discussing the elements of a failure to protect claim).

## Count 2

Prison officials are prohibited from retaliating against inmates for exercising their First Amendment rights by filing grievances about their conditions of confinement. *See Manuel v.*

---

[1] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

*Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). A plaintiff asserting a retaliation claim must allege that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter future First Amendment activity; and (3) his protected activity was "at least a motivating factor" in the defendant's decision to take retaliatory action against him. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

Here, Plaintiff has failed to state a retaliation claim against Defendant Bird because he has not pled facts linking Bird's conduct to any First Amendment activity. According to Plaintiff, his cellmate is "notorious" for filing grievances, but he has not filed any grievances. In fact, he states that he does not have access to blank grievance forms. (Doc. 13-1, p. 4, 5, 6). Thus, Bird could not have been retaliating against Plaintiff for a previous grievance that he had filed when she refused to assist him after a feces bomb was thrown in his cell on March 19, 2025.

Plaintiff, however, has stated a viable claim against Haney for threatening to shake down his cell if he assisted his neighbor in writing a grievance. Threatening penalties for future speech violates the First Amendment. *See Fairley v. Andrews,* 578 F. 3d 518, 525 (7th Cir. 2009); *Beatty v. Henshaw,* 826 F. App'x 561, 563 (7th Cir. 2020). Further, a colorable argument can be made that Plaintiff has a First Amendment right "to assist other inmates with truthful grievances, subject to legitimate penological interests." *Harris v. Walls,* 53 F. Supp. 3d 1092, 1099 (C.D. Ill. July 7, 2014), *aff'd* 604 F. App'x 518, 521 (inferring based on the evidence that "some of [the plaintiff's] conduct was protected by the First Amendment). Count 2 therefore is dismissed as to Bird but will proceed against Haney.

### SECOND MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff has filed a second motion seeking a temporary restraining order and requests that the Court reconsider the denial of the first motion for a temporary restraining order. (Doc. 11, 14). Plaintiff states that he and his cellmate "have been threatened, attacked, and extorted to prevent

further attack."[2] He claims that he is unable to file grievances, and his only remedy is to seek intervention by the Court. Plaintiff asks the Court to order that (1) he and his cellmate be transferred to housing unit 6A; (2) he and his cellmate be transferred to Big Muddy River Correctional Center; and (3) the Intel Unit come and take his statement about the issues he is facing.

As Plaintiff has been advised, a temporary restraining order ("TRO") is an order issued without notice to the party to be enjoined that may last no more than 14 days. FED. R. CIV. P. 65(b)(2). A TRO may issue without notice only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. FED. R. CIV. P. 65(b)(1).

Again, Plaintiff has failed to set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard.* Accordingly, the motion for a temporary restraining order and the request for reconsideration are **DENIED**.

## DISPOSITION

For the reasons set forth above, the Motion for Leave to File an Amended Complaint is **GRANTED**. (Doc. 13). The Clerk of Court is **DIRECTED** to file the proposed amended complaint at Doc. 13-1 as the First Amended Complaint.

The First Amended Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Wilson, Johnson, Bird, Barwick, and Haggert. **COUNT 2** will proceed against Haney and is **DISMISSED without prejudice** as to Bird.

---

[2] Plaintiff does not explain what he means by "attack." The Court presumes that by "attack" Plaintiff is referencing the "feces bombs" thrown into his cell on March 19 and 20, 2025. (*See* Doc. 13-1, p. 4).

The second Motion for a Temporary Restraining Order and the request to reconsider denial of the first Motion for a Temporary Restraining Order are **DENIED**. (Doc. 11, 14).

The Clerk of Court **SHALL** prepare for Wilson, Johnson, Bird, Barwick, Haggert, and Haney the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to each defendant's place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a

delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   April 30, 2025**

*s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.