IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ADAM C. BROWN-WINDLE,

        Plaintiff,

v.

JONATHAN WILSON, *et al.*,

        Defendants.

Case No. 25-cv-00427-SPM

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a Motion for Preliminary Injunction filed by Plaintiff Brown-Windle. (Doc. 25). For the following reasons, the motion will be denied.

### BACKGROUND

Plaintiff Adam Brown-Windle, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, commenced this civil action on March 28, 2025, pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Plaintiff alleges that March 18, 2025, inmates housed on his wing learned the details of the criminal conviction of Thomas Smith, Plaintiff's cellmate, and threatened Plaintiff and Smith with physical harm, including stabbing and throwing feces and boiling grease on Plaintiff and Smith. (Doc. 16, p. 3). Plaintiff told an unnamed officer about the threats and was told to wait until the day shift. Smith contacted his father by text, asking him to contact the Intelligence Unit. (*Id.*). Smith's father eventually spoke to Defendant Wilson, who said he would speak to Smith. (*Id.* at p. 4).

On March 19, 2025, inmates threw a "feces bomb" into Plaintiff's cell. (Doc. 16, p. 4). Plaintiff and Smith reported the incident to Defendant Sergeant Bird. However, she merely walked away, saying "that's what you get for writing grievances." Plaintiff explains that Smith is notorious

for writing grievances. Plaintiff and Smith had to clean up the feces without gloves or proper cleaning materials. Throughout the day, other inmates issued threats to stab Plaintiff and Smith. (*Id.*).

The following day, March 20, 2025, another feces bomb was thrown into the cell. (Doc. 16, p. 4). Plaintiff and Smith requested Defendant Lieutenant Johnson to move them to protective custody (PC). Johnson replied that he was not doing PC paperwork and suggested that Plaintiff could refuse housing, take the ticket, and go to segregation. Plaintiff declined this option. He believed he would be safer staying in his cell because the gang members who threatened him had warned him that he would also not be safe in segregation. (*Id.*).

From March 18, 2025, through March 25, 2025 (the date Plaintiff submitted his original Complaint), Plaintiff did not leave his cell, skipping recreation, chow, and showers for fear of attack. (Doc. 16, p. 4). Smith's father contacted Warden Barwick and other officials, but nothing was done to move him and Smith to safety (*Id.* at p. 2, 4-5).

On April 1, 2025, Smith was taken to speak to "IA." (Doc. 16, p. 5). When Smith returned, Smith told Plaintiff that he had been forced to sign a document stating that he, Smith, did not fear for his safety. Smith also told Plaintiff that IA threatened to place him in a segregation cell with a rival gang member if his father did not stop calling the Illinois State Police. (*Id.*).

On April 2, 2025, other inmates began to use extortion to obtain Plaintiff and Smith's property. (Doc. 16, p. 5). In exchange for his safety, Plaintiff has given other inmates his commissary items and his television. (*Id.*).

On April 3, 2025, Plaintiff spoke to Counselor Haggard about his situation. (Doc. 16, p. 5). Haggard told Plaintiff to write a grievance. Plaintiff informed her that there were not any grievance forms available in the housing unit. Haggard did not assist Plaintiff in obtaining grievance forms. Haggard laughed and said, "Well I guess you're fucked, and I have less work to do." (*Id*).

On April 25, 2025, Correctional Officer Haney and another officer issued Plaintiff's neighbor a bogus shakedown slip. (Doc. 16, p. 6). Haney told Plaintiff that if Plaintiff attempted to help his neighbor write a grievance about the incident, "we will fuck your shit up next." (*Id.*).

Pursuant to 28 U.S.C. §1915A, the Court conducted a merit review of the Complaint. In the merit review order, the Court designated two surviving claims: 1) an Eighth Amendment claim against Wilson, Johnson, Bird, Barwick, and Haggard for failing to protect Plaintiff from other inmates (Count 1); and 2) a First Amendment retaliation claim against Haney (Count 2). (Doc. 15). On May 20, 2025, Plaintiff filed his fourth motion seeking emergency injunctive relief. (Doc. 25).[1] In the motion for preliminary injunction currently before the Court, Plaintiff asks the Court to move him to safety and transfer him to Big Muddy River Correctional Center. He states that his cellmate, Smith, was moved to a different cell in preparation to be transferred to Big Muddy River Correctional Center to keep Smith safe "from the same situation Plaintiff faces." (*Id.* at p. 2). Plaintiff asserts that because he "faces the exact same threats" as Smith, he too should be transferred. (*Id.*). Defendants have filed a response brief in opposition to the motion. (Doc. 30).

## MOTION FOR PRELIMINARY INJUNCTION

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). In order to obtain a preliminary injunction, the plaintiff has the burden of demonstrating:

- a reasonable likelihood of success on the merits;

---

[1] *See also* Doc. 2, 14, and 20.

- no adequate remedy at law; and
- irreparable harm absent the injunction.

*Planned Parenthood v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012). All three requirements must be satisfied before the Court can consider whether preliminary injunctive relief is warranted. Additionally, in the context of prisoner litigation, the scope of the Court's authority to enter an injunction is circumscribed by the Prison Litigation Reform Act (PLRA). *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Westefer,* 682 F.3d at 683.

Here, Plaintiff again has failed to make a clear showing that he is entitled to a preliminary injunction. In Plaintiff's previous motion for a preliminary injunction filed on May 6, 2025, which was denied by the Court, he asserted that he was "still under threats of violence," and Defendants were failing to protect him. (Doc. 20). The current motion is very similar, and again, Plaintiff only makes general assertions that he continues to "be under severe threat of gang violence" and that "being threatened to be jumped and stabbed," would cause irreparable harm, in the form of physical injury or death. (Doc. 25). He does not articulate any details regarding the recent threats, such as who is threatening him or when and how the threats were made. It is also not entirely clear why Plaintiff's safety is still in danger from other inmates. According to the First Amended Complaint, inmates threatened Plaintiff and Smith, his cellmate, because they had discovered Smith's criminal conviction. Smith, however, is no longer housed with Plaintiff, so it is unclear why the threat still remains. Plaintiff newly asserts that Sergeant Bird has labeled him a "snitch," which places him "in further danger." But he does not provide the Court with any information regarding the nature of the new danger resulting from Bird's actions. Additionally, a preliminary

injunction motion is not a proper avenue for Plaintiff to add claims and allegations to this lawsuit. Thus, Plaintiff has not demonstrated irreparable harm without Court interference.

The Court also denies Plaintiff's motion because "his request for a transfer to another institution is beyond the scope of what a court can order." *Adams v. Larson,* No. 21-cv-748-MAB, 2023 WL 7221466, at *5 (S.D. Ill. Mov. 2, 2023) (quoting *Brown v. Toney*, No. 22-CV-018, 2022 WL 17811370, at *1 (E.D. Wis. Dec. 19, 2022)). Requesting "a transfer to a specific facility is unquestionably not the most narrowly-tailored and least intrusive means to address any of Plaintiff's allegations." *Id.* (citing *Westefer*, 682 F.3d at 683). For these reasons, the motion is denied.

### DISPOSITION

For the reasons stated above, the Motion for Preliminary Injunction is **DENIED**. (Doc. 25).

**IT IS SO ORDERED.**

**DATED: July 1, 2025**

      *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**